**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 31 2007**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 04-70774 |
| | ) | |
| Judith F. Richendollar, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

There are two related matters before the court in this case. The first is Chapter 7 Trustee Bruce Comly French's ("Trustee") motion for approval of a compromise of a personal injury claim that is property of the estate [Doc. #75], to which Robert E. Wilson ("Wilson") has objected [Doc. #77]. The second is Trustee's objection to Wilson's proof of claim [Doc. #95].

Wilson was the attorney engaged by Debtor Judith F. Richendollar ("Debtor") pre-petition on a contingency fee basis to represent her in connection with the personal injury claim. Both matters generally raise the same issue, which is how Wilson's claim for attorney's fees and costs is to be treated in this Chapter 7 case. Wilson does not contest the reasonableness of the amount of Trustee's proposed settlement. Rather Wilson asserts that he has an attorney's charging lien against Trustee's proposed settlement proceeds for his total contingency fee amount of $31,666.67, plus expenses, for a total of $32,469.67. Alternatively, if he does not have a charging lien, Wilson asserts that he has a *quantum meruit* claim for the same amount.

The court has jurisdiction over Debtor's Chapter 7 case under 28 U.S.C. § 1334(a) and the general

order of reference in this district. *See* 28 U.S.C. § 157(a). Proceedings regarding approval of compromises and objections to claims are core proceedings that this court may hear and determine. 28 U.S.C. § 157(b)(1), (2)(A) and (B).

## FACTUAL BACKGROUND

Debtor and her son were involved in an accident that occurred on May 12, 2003, in Marion County, Ohio. [Doc. #88, Att. 1]. Apparently that same day, she signed a Contract to Hire Attorney with the law firm of Wilson & Kochheiser Co., L.P.A. ("Agreement") [*Id.*]. The Agreement provided that the law firm would represent Debtor in connection with any claims arising out of the accident. The parties agreed that "Client will pay Attorneys for their services one-third (1/3) of any gross proceeds recovered in any manner and in addition, shall reimburse Attorneys for any costs or expenses paid by Attorneys involved in preparation and pursuit of Client's claim or claims." [*Id.*]. The Agreement also contains an integration clause stating that "[t]here are no other agreements, written or oral, between Client and Attorneys." [*Id.*]. Wilson's time records show that he commenced doing work on the claim in August 2003 and continued doing so through May 2006. [*Id.*, Att. 16]. Wilson filed a complaint on behalf of Debtor in the Marion County, Ohio Common Pleas Court on May 6, 2005. [*Id.*, Att. 6].

In the interim, Debtor commenced a voluntary bankruptcy case. She filed a petition for relief under Chapter 13 of the Bankruptcy Code on December 31, 2004, after the accident and after the Agreement was signed. A different attorney, James Luton, represented her as debtor's counsel in the bankruptcy case. Debtor listed the personal injury claim as an asset on her Schedule B, specifying that it had a market value of zero. [Doc. #6]. Neither Wilson nor the law firm was scheduled as a creditor and the Agreement was not listed as an executory contract on Schedule G. Debtor's Chapter 13 plan provided for monthly payments of $100 to the Chapter 13 Trustee for 12 months, then one lump sum payment of $90,000, from the proceeds of the personal injury claim, then $100 per month for 23 months. [Doc. #18; *see* Doc. #88, Att. 3]. The proposed plan also provided that "[t]itle to the Debtor's property shall revest in debtor on confirmation of a plan." [*Id.*, ¶ 11]. The court entered its Order Confirming Plan on April 14, 2005. [Doc. #28]. The confirmation order specified that "this Court shall retain jurisdiction over the net proceeds due debtor as the result of a pending Personal Injury claim..."

Attorney Luton notified Wilson of the commencement of Debtor's Chapter 13 case by letter dated January 21, 2005, and again by letter dated February 15, 2005. [Doc. #88, Atts. 3, 4]. Luton's letters were followed up by a letter from Chapter 13 Trustee Anthony DiSalle dated April 1, 2005, notifying Wilson that the bankruptcy court had retained jurisdiction over the personal injury claim and requesting that he be kept

advised of progress so that they could discuss disposition of proceeds. [*Id.*, Att. 5].

At Debtor's request, her Chapter 13 case was converted to a Chapter 7 case on October 19, 2005, [Doc. #36], and Trustee was immediately appointed. Amended schedules were filed, but there were not any changes relevant to the issues before the court. Although there did not appear to be any claim of exemption in the personal injury proceeds asserted on Debtor's Schedule C, Trustee objected to an exemption for same, which objection was sustained without response by order entered on February 15, 2006. [Doc. #51].

Trustee filed an application to employ Diane W. French to handle the personal injury claim on behalf of Trustee and the estate. The application was served on Attorney Luton, the Office of the United States Trustee, Debtor and Diane French. [Doc. #52]. It was granted by order entered on March 6, 2006. [Doc. # 56]. The application and order as to Diane French provided that she would be compensated on a contingency fee basis of 33 1/3 %, plus expenses. A separate application was filed to employ Trustee as counsel to the Trustee. [Doc. #53]. This application was also granted on March 6, 2006. [Doc. #57]. It provided that Trustee would be compensated at an hourly rate of $125 per hour. [Doc. #57].

Trustee scheduled and the court authorized a Rule 2004 examination of Debtor. [Doc. #60]. Thereafter, Trustee reported to this court that he would "review the records of the court of Common Pleas of Marion County, Ohio in Case No. 2005 CV 0341 before determining whether to pursue this claim or abandon the Estate's interest." [Doc. 66]. This was followed by removal of the personal injury case to this court on May 19, 2006. [ Adv. Pro No. #06-3270]. Although significant jurisdictional and other questions about the removal were raised by the bankruptcy court [*Id.*, Doc. #5], the court eventually postponed further action therein pending Trustee's evaluation in the main case of the proposed settlement and issues relating to Wilson's claimed charging lien against the proceeds. [*Id.*, Doc. # 13].

Wilson's time and other records show that he continued to pursue the personal injury claim through the Chapter 13, after conversion to Chapter 7 and through removal. On March 24, 2006, Wilson sent Luton a letter reporting a full and final offer of $95,000 from Grange Insurance and further "requesting the approval of the Bankruptcy court to accept their offer. Would you please present our request to settle for $95,000 to the Court for their approval." [Doc. #88, Att. 12]. This was followed by a letter to Trustee dated June 16, 2006, in which Wilson states that "[i]n reference to the above matter [Bankruptcy Case No. 04-70774], I understand that the deposition of Judy Richendollar was taken on May 2, 2006. Please advise whether we have your permission to settle her case for the sum of $95,000. I have included a copy our proposed disbursement sheet." [*Id.*, Att. 13]. The proposed disbursement sheet shows proposed disbursements on account of the Agreement of $32,469.67, with the net of $62,530.33 to be held in trust

3

until further order of the bankruptcy court. [*Id.*]. According to the affidavit of Attorney Michael Collins, who represented the personal injury defendant's insurer in the personal injury action, he conveyed an offer of $95,000 to settle the case to Wilson on March 16, 2006, after another demand from Wilson in January 2006 and further negotiations. [*Id.*, Att. 15]. Collins further states that shortly after March 16, 2006, Wilson "advised that his client would accept $95,000 as a full and complete settlement" subject to bankruptcy court approval. [*Id.*]. Collins never spoke to or negotiated any settlement with Attorney Diane French. [*Id., ¶¶* 11-12]. Collins also appeared at the initial pretrial in the removed case in bankruptcy court and reported the settlement offer. [Adv. Pro. No. 06-3270, Doc. ##12, 13].

Trustee filed his motion to approve compromise on July 7, 2006. [Doc. #75]. The motion requested bankruptcy court approval to settle the personal injury claim for the total amount of $102,808.88. This sum represented the $95,000 settlement amount negotiated by Wilson, plus a credit to the personal injury defendant's insurer of $7,808.88 "for monies previously paid by Grange on behalf of Judy Richendollar." [Doc. #88, Att. 15, ¶ 11]. The motion was served on all creditors and parties in interest. Wilson was the only objector, asserting that he has a charging lien on the proceeds that must be protected by Trustee. [Doc. #77]. After a claims bar date was set, Wilson also timely filed a proof of claim seeking payment of the $32,379.67 he claims due under the Agreement. The claim asserts this debt is an unsecured, nonpriority claim. Trustee has also objected to the claim [Doc. #95], asserting that Wilson is not entitled to recover under the Agreement and further that he should be barred from any *quantum meruit* recovery.

## **LAW AND ANALYSIS**

I. Does Wilson Have A Charging Lien on the Proposed Settlement Proceeds?

The first issue the court must decide is whether Wilson has any security interest in the settlement proceeds that Trustee proposes to accept. The answer to this question depends on the interplay between bankruptcy law and state law, which in this instance is Ohio law. Debtor commenced this case before the October 17, 2005, effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCA"). Consequently the citations to the Bankruptcy Code in this decision are to the Bankruptcy Code as in effect prior to BAPCPA.

Upon commencement of Debtor's Chapter 13 case, the personal injury claim in issue became property of the bankruptcy estate formed upon filing of the petition. 11 U.S.C. §§ 1306(a), 541(a)(1). Upon confirmation of Debtor's Chapter 13 plan, according to both the plan and the Bankruptcy Code, the personal injury claim that was property of the estate re-vested as property of Debtor. 11 U.S.C. § 1327(b). The fact that the court retained jurisdiction over the personal injury claim does not mean that it was not Debtor's

4

property under Debtor's control. As Trustee Disalle noted in his letter, the disposition of the net [emphasis added] proceeds was the reason for retention of jurisdiction, not control over the amount or manner or acquisition of same, which remained with Debtor after confirmation. Wilson was thus not required to be employed by the Chapter 13 Trustee to pursue the claim on behalf of the estate, as asserted here by Trustee, because it was Debtor's claim to reduce to cash and pay to the Chapter 13 Trustee pursuant to the confirmed plan.

Upon conversion, the provisions of 11 U.S.C. § 348 became effective. The following parts of § 348 are relevant to the charging lien issue:

> (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.
> ***
> (d) A claim against the estate or the debtor the arises after the order for relief but before conversion in a case that is converted under section 1112, 1208 or 1307 of this title, other than a claim specified in section 502(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.
> ***
> (f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title---
> > (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of the conversion;***.

In turn, Wilson has a secured claim only if he has a "lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title." 11 U.S.C. § 506(a). The question of whether Wilson had an interest in property in which the estate has an interest depends on whether he obtained a valid charging lien under Ohio law. *Butner v. United States*, 440 U.S. 48, 55 (1979); *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1450 (6th Cir. 1994); *Elec. Metal Prods., Inc. v. Bittman (In re Elec. Metal Prods., Inc.)*, 916 F.2d 1502, 1504 (10th Cir 1990)("The validity and extent of an attorney's lien in bankruptcy is determined by state law."); *Corzin v. Decker, Vonau, Sybert & Lackey Co., L.P.A.*, 311 B.R. 479, 484 (B.A.P. 6th Cir. 2005). There are two different points in the bankruptcy process where the question of whether a charging lien had arisen under Ohio law against the proceeds must be evaluated: prior to the commencement of the case and between commencement and conversion.

The Sixth Circuit Bankruptcy Appellate Panel recently undertook in the *Corzin* case a comprehensive analysis of Ohio law regarding attorney charging liens and how they are created. There is no reason for this court to repeat or restate that thoughtful discussion here. Suffice to say Ohio law is sketchy and somewhat contradictory about the degree of proof of required to establish an attorney's charging lien. However, one principle nevertheless emerges clearly from the cases discussed and their progeny: there is no lien until a fund is created in some manner, whether through judgement, arbitration or settlement, upon which the lien can attach. *Petty v. Kroger Food & Pharmacy,* 165 Ohio App. 3d 16 (2005); *Mancino v. Lakewood,* 36 Ohio App. 3d 219 (1987)*; Fire Protection Resources, Inc. v. Johnson Fire Protection Co.,* 72 Ohio App. 3d 205 (1991); *see also* cases cited in *Telxon Corporation v. Smart Media of Delaware, Inc*, C.A. Nos. 22543, 22673, 2005 Ohio App. LEXIS 5608 (Ohio Ct. App., 9th App. Dist., November 23, 2005)("Without such a judgment or fund, there can be no attorney charging lien, as there is nothing upon which to attach this lien and any argument over the legal aspects of that lien become moot."). Before judgment an attorney has no lien upon or interest in the client's cause of action. *Mancino*, 36 Ohio App. at 224.

In this case, no fund-creating event occurred pre-petition. Debtor's claim arose pre-petition and became property of the estate that re-vested in her upon confirmation of her Chapter 13 plan. But there was no fund that existed as of the commencement of the Chapter 13 case. Likewise, although suit had been filed by Wilson on Debtor's behalf after commencement of the Chapter 13 case and before conversion to chapter 7, no fund creating event occurred during that time period. As of the conversion date, Wilson likewise had no property interest in any fund created by his efforts because there was simply no fund. The undisputed facts show that no agreement to settle the case was reached until after conversion of the case to Chapter 7 and the cause of action had become property of the Chapter 7 estate subject to the control of Trustee, not Debtor. Wilson could not obtain a lien in property of the estate based on post-conversion events. Wilson did not have any interest in property of the estate under Ohio law as required to have a secured claim at any time relevant under § 506(a). *See In re Miglia,* 345 B.R. 919 (Bankr. N. D. Iowa 2006)(attorney who agreed to settle case before debtor filed Chapter 7 proceeding but did not receive settlement funds until after bankruptcy commenced did not have a valid charging lien and was prevented from perfecting it by the automatic stay).

Moreover, although the Sixth Circuit Bankruptcy Appellate Panel in *Corzin* applied a very low standard of proof for what it takes to create an attorney's charging lien under Ohio law, it appears at a minimum that some affidavit or other proof from the client acknowledging the charging lien arrangement

6

must be provided. The Agreement contains no provision for creating a charging lien on proceeds of the claim and the record is otherwise devoid of proof from either Debtor or even Wilson that she had agreed to or approved of such an arrangement. Thus, even if Wilson's efforts had resulted in a fund upon which such a lien could attach, there is no showing in the record that there was any factual basis for asserting a charging lien on any fund.

As no charging lien arose in favor of Wilson and there is no other objection to the amount or reasonableness of the proposed settlement of the personal injury claim, Wilson's objection will be overruled and Trustee's motion to approve compromise will be granted.

II. Is Wilson Entitled to An Administrative Expense Claim?

Wilson's written filings, including the proof of claim, do not specifically assert that he is entitled to an administrative expense claim. Indeed his proof of claim asserts an unsecured non-priority claim for $32, 370.67, which is the amount he would be due under the Agreement in the absence of bankruptcy. However, Wilson asserts that he is entitled to the full contingency fee payment as provided under the Agreement and his written filings and oral arguments on the issues before the court use the language of benefit to and preservation of the estate consistent with administrative expense claims. The court will therefore analyze whether Wilson is entitled to an administrative expense claim, which would not necessarily be asserted by proof of claim.

Section 330(a)(1) of the Bankruptcy Code governs "fees for services rendered by attorneys in connection with bankruptcy proceedings." *Lamie v. United States Trustee*, 540 U.S. 526, 529 (2004). In turn, compensation awarded under § 330 is payable as an administrative expense. 11 U.S.C. § 503(b)(2). Wilson rendered legal services post-conversion pertaining to property of the bankruptcy estate. However, § 330 "does not authorize payment of attorney's fees unless the attorney has been appointed under § 327 of the Code." *Id.* Wilson was not appointed by the court and employed under § 327. Two other lawyers, Diane French and Trustee, were appointed under § 327 to represent Trustee.[1] Absent employment by Trustee with the approval of the court, under *Lamie* Wilson is not otherwise entitled to compensation from the estate as an administrative expense under the more general provision of § 503(b)(1)(A) even if his efforts preserved or protected property of the chapter 7 estate. There is no basis for an award of any administrative

---

[1]The attorneys employed by Trustee with the court's approval have not yet applied for compensation and the amount of any fees claimed by either or both of them is not an issue presently before the court. Their ultimate entitlement to fees and the amount to which they might be entitled do not need to be decided to address the two matters presently before the court. To the extent Wilson is determined to be an unsecured creditor, he will have standing to object to any fees sought by them.

7

expense to Wilson.

III. Does Wilson Have a General Unsecured Claim and What is the Amount of the Claim?

The legal status of Debtor's personal injury claim changed upon conversion from Chapter 13 to Chapter 7 on October 19, 2005. The claim that had re-vested in Debtor upon confirmation of the Chapter 13 plan became property of the Chapter 7 estate by operation of § 348(f)(1)(A), quoted above. Upon conversion Debtor no longer had any control over or right to litigate or direct disposition of the personal injury claim. As property of the estate in the converted Chapter 7 case, control over and disposition of the claim became the fiduciary responsibility of Trustee, *see* 11 U.S.C. § 704, and he may elect to either prosecute or abandon the claim. Whether Wilson was aware of conversion or not, he was divested by conversion of authority to act with respect to the claim in the absence of authorization, direction and ultimately employment by Trustee.

The Agreement was entered into before bankruptcy. Section 365 of the Bankruptcy Code permits a trustee to assume or reject any executory contract to which a debtor is a party, subject to approval of the bankruptcy court. 11 U.S.C. § 365(a). The term "executory contract" is not defined in the Bankruptcy Code, however, courts generally treat contingency fee contracts between clients and lawyers that have not yet matured by settlement or judgment as of the filing date of the petition as executory and thus subject to assumption or rejection. *In re Willis,* 143 B.R. 428, 431 (Bankr. E.D. Tex. 1992). This is consistent with controlling Ohio Supreme Court authority holding that clients are entitled to discharge an attorney or law firm at any time, with or without cause and whether the contract of employment is express or implied. *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St. 3d 570, 574 (1994)(Syllabus 1). Upon commencement of a Chapter 7 case where the property of the estate includes a debtor's personal injury claim and there is an executory contingency fee agreement, a trustee has three options if he elects to prosecute the claim: (1) assume the existing executory contract with court approval under § 365(a); (2) negotiate his own contract with existing counsel subject to court approval under §§ 327; or (3) engage new counsel with approval of the court under § 327.

In this case, Trustee chose the third option of engaging new counsel with court approval. He neither assumed the Agreement under § 365(a) nor entered into a new contingency fee contract with Wilson under § 327. Assumption of an executory contract can only be accomplished with court approval in compliance with § 365 and cannot be implied from the actions of the parties. *In re Dehon, Inc*., 352 B.R. 546, 560 (Bankr. D. Mass. 2006); *see In re Swallen's, Inc.*, 210 B.R. 120, 122 (Bankr. S. D. Ohio 1997). Under § 365(d)(1) an executory contract that is not assumed or rejected within 60 days after the order for relief is

8

deemed rejected. Section 348(c) specifies that in a converted case the 60 day time period in § 365(d) for assuming or rejecting an executory contract recommences with the conversion order. When Trustee did not assume the Agreement within 60 days after conversion to Chapter 7, it was deemed rejected.

The effects of rejection of the Agreement are established by §§ 365(g) and 502(g). Section 365(g) provides that rejection of an executory contract is deemed a breach of that contract occurring immediately prior to the date of filing of the bankruptcy case. "The purpose of section 365(g) is to make clear that, under the doctrine of relation back, the other party [Wilson] to a contract that has not been assumed Section 365(g) is simply a general unsecured creditor." 3 Alan N. Resnick and Henry J. Sommer, *Collier on Bankruptcy* ¶ 365.09[1] (15th ed. rev. 2006). Similarly § 502(g) specifies that the claim shall be allowed under § 502 subsections (a), (b) or (c) or disallowed under subsections (d) or (e). "The effect of the breach is to permit the creditor to seek allowance of its claim under section 502...[r]ejection does not, however, affect the parties' substantive rights under the contract or lease, such as the amount owing or a measure for damages for breach." *Id.* [citations omitted].

Under § 502(b)(1) all claims are not allowable to the extent they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." And under § 502(b)(4) a claim for services of an attorney for debtor is not allowable if the claim exceeds the reasonable value of the services. The court must therefore determine what Wilson could recover under Ohio law upon his discharge by the client.

The Ohio Supreme Court case *Reid, Johnson* supplies the rule controlling the amount of Wilson's claim. *See In re Nelson*, 206 B.R. 869, 879 (Bankr. N.D. Ohio 1997). Under *Reid, Johnson,* once an attorney's services are terminated, with or without cause, the attorney can no longer recover on the contingency fee agreement and is entitled to pursue recovery only on the basis of *quantum meruit* for the reasonable value of the services rendered. *Reid, Johnson*, 68 Ohio St. 3d at 574. The disavowed contingency fee contract limits the *quantum meruit* recovery, *id.* at 576, and the *quantum meruit* recovery is still contingent upon the successful occurrence of the contingency, *i.e.* successful judgment or settlement of the claim, *id.*, Syllabus 2; *see* 11 U.S.C. § 101(5)(A) (a "claim" in bankruptcy is a right to payment, whether or not such right is liquidated, contingent or matured). Subject to a caveat addressed below, Wilson thus has a contingent, general unsecured claim for the reasonable value of his services. The contingency will have successfully been removed upon approval of Trustee's proposed settlement of the personal injury claim and payment of the proceeds. *Reid, Johnson* directs trial courts to "consider the totality of the circumstances involved in the situation" in determining the reasonable value of a discharged attorney's services. *Id.,*

9

Syllabus 3. Factors identified by the Ohio Supreme Court to be analyzed include the hours worked, the recovery sought, the skill demanded, the results obtained and the attorney-client relationship itself. An action in *quantum meruit* also requires the application of equitable principles, like fairness and justice, to the facts and circumstances at hand. *See* Nelson, 206 B.R. at 881.

Wilson asserts that the *quantum meruit* value of his services is the same $32,469.67 recovery he would be entitled to under the contingency fee contract. The factual basis for his argument is that he pursued the litigation, did all the work and negotiated the settlement that Trustee ultimately proposed to accept. Wilson buttresses his factual position with the Collins affidavit. These facts are not contested by Trustee. The court nevertheless disagrees. Of critical importance is the fact that all of the significant negotiations leading to the proposed settlement occurred long <u>after</u> the conversion of the case to Chapter 7 at a time when the claim was under the control of Trustee and Wilson had no authority to act. Wilson was made aware of the pendency of the Chapter 13 bankruptcy case very soon after it was filed. In the court's view it was his obligation to follow up to ensure that the case had not been converted to Chapter 7 at any relevant point in time and that he had continued authority to act, which he did not. Follow up could have been implemented and assured by the simple act of filing with the bankruptcy court a request for notices under Fed. R. Bankr. P. 2002(g). That did not occur.

This is a critical part of the "attorney client relationship" aspect of the totality of the circumstances the Ohio Supreme Court directs to be considered. The result sought by Wilson would wipe out the provisions of the Bankruptcy Code regarding trustee control and authority, limitations on post-petition employment and statutory limitations on assumption of executory contracts. Such a result would also discourage attorney vigilance in terms of knowing whether a client has or has not sought bankruptcy protection and encourage attorneys who do become aware of such filings to ignore the relevant statutory limitations on claims as property of the estate and employment of professional persons. The record does not show precisely when Wilson became aware of the conversion and of Trustee's existence qua trustee. Ultimately, however, the court does not find that fact relevant for the reasons just discussed. The court rejects the full contingency contract recovery as the appropriate measure of a *quantum meruit* recovery in this case.

As to other relevant factors, nothing has been shown that made the personal injury case in any way unusual, complex or difficult to litigate. Medical records were obtained for Debtor, but the common pleas court case pleadings list supplied by Wilson shows no formal discovery taken of Defendants and only some basic discovery to Debtor (and her son, also a party) to which Debtor had to respond. No experts were

10

hired, as shown by the cost records. No depositions were taken according to the pleadings list and the time records. There are no identified unusual time limitations and no showing that any other employment was precluded by representation of Debtor on this claim. The record contains Wilson's records as to time spent, showing a total of 52.90 hours spent on the claim over almost three years time. Of those hours, 14.8 of them were expended after conversion of the case to Chapter 7 when Debtor had no further control over the claim and Wilson had no authority to act. And of those 14.8 hours, 5.5 of them involved appearance at a bankruptcy court hearing on the settlement. No hourly rate or proposed hourly rate appears in the record. But with any reasonable hourly rate, the cap of the contingency fee amount set by the Ohio Supreme Court in *Reid, Johnson* will not come close to being met. The $31,666.67 amount for fees cannot otherwise be allowed on the basis of Wilson having incurred more fees on an hourly basis than the contingency fee contract amount.

The court finds that the reasonable value of Wilson's services is measured by the 38.1 hours Wilson spent on the personal injury claim prior to the date of conversion, plus the costs advanced. Contrary to Trustee's assertion, Wilson had authority to pursue the claim on Debtor's behalf and did so up until that point. Without the investigation of the claim, obtaining Debtor's medical records, timely commencement of suit and response to defendant's discovery requests, the claim would not have been available to the Chapter 7 estate for the benefit of creditors. The total number of hours shown as expended on these efforts is reasonable. The records provided show that Wilson's efforts prior to conversion were necessary, competent and effective, as confirmed by the result ultimately achieved albeit without authority to act. Hours expended after the conversion date are not properly included because Wilson lacked authority to act on the claim and the agreement was rejected. Quite simply, he had no client. Moreover, in any event, hours associated with traveling to and appearing in bankruptcy court to assert his own objection to Trustee's settlement are not compensable from the estate in connection with his representation of Debtor on the personal injury claim.

The court lacks any evidence from which the proper hourly rate to be applied can be determined and will set a further hearing at which such evidence, as well as any other evidence deemed relevant to the *quantum meruit* analysis may be presented. (No separate evidentiary hearing was held on the claim objection.)

The court has one other question about Wilson's claim that must be addressed at the hearing. The record does not show his standing to assert this claim. The Agreement is in the name of an entity. Wilson is not a party to the Agreement. Yet the proof of claim has been filed by him personally and not in the name

11

of the law firm that is a party to the Agreement. Wilson also must show at the hearing that he is entitled to assert the claim.

In accordance with this memorandum of decision, the court will enter two separate orders. One order will approve Trustee's proposed settlement of the personal injury claim. The other order will set the Trustee's claim objection for further hearing for the purposes explained above.